UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RONNIE LEE BOWLING, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 03-28-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GLENN HAEBERLIN, Warden, | ) | **AND ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Ronnie Lee Bowling petitioned for a writ of habeas corpus, challenging his conviction in a Kentucky court for the murders of Ronald Smith and Marvin Hensley. R. 1. Bowling's petition claimed that both his trial and his capital sentence violated his constitutional rights. *See id.* Over the course of three opinions, this Court denied Bowling's petition and every claim that he raised. R. 211; R. 245; R. 259; *see also* R. 261 (entering judgment against Bowling). This Court then granted Bowling a Certificate of Appealability (COA) on five of the issues (spread over six claims) raised in his petition.[1] R. 260. In doing so, it invited either party to make a motion for reconsideration if they disagreed with the issues the Court identified or thought other issues should be heard on appeal. *See id.* at 3. Bowling filed a motion seeking reconsideration of eleven issues. R. 262. One of those issues deserves consideration by the Sixth Circuit and will receive a COA. The rest do not. Therefore, the Court will grant the motion in part and deny it in part.

---

[1] Since two claims raised the same issue, there were really only five issues certified for appeal, even though a COA was granted for six claims. *See* R. 260 at 2.

## DISCUSSION

**I.       Granting a Certificate of Appealability Under § 2253**

As the habeas petitioner, Bowling has the burden of showing that a COA should issue on a given claim.  *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing 28 U.S.C. § 2253(c)).  This Court reached the merits of all the claims for which Bowling now seeks a COA.  *See* R. 245; R. 259.  Thus, for a COA to issue on any of those claims, he must make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); *see also Miller-El v. Cockrell*, 537 U.S. 322, 349–50 (2003) (Scalia, J., concurring) (explaining that the "substantial showing" is a necessary, but not sufficient, condition for a COA under *Miller-El* (citing *Slack*, 529 U.S. at 484)).  To make a sufficiently "substantial" showing, Bowling must establish that "reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong."  *Slack*, 529 U.S. at 484.  Additionally, for claims this Court resolved under § 2254(d), Bowling must show that reasonable jurists would find this Court's application of § 2254(d) debatable.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003*)* ("We look to *the District Court's application of AEDPA* to petitioner's constitutional claims and ask whether *that resolution* was debatable amongst jurists of reason." (emphasis added)); *see also id.* at 349–50 (Scalia, J., concurring) (explaining that *Miller-El* requires judges to deny a COA where "all reasonable jurists would conclude that a substantive provision of the federal habeas statute bars relief").

Bowling chastises this Court for applying what he believes is an improper standard in granting his COA.  R. 262 at 2.  Not so.  His criticism misunderstands Supreme Court

precedent and fails to appreciate how this Court's two-step approach to the COA fulfilled its gatekeeping function under § 2253(c)(2).

First, Bowling misunderstands the Supreme Court's decision in *Miller-El v. Cockrell*. He claims that, because *Miller-El* held that courts of appeal cannot deny a COA based on the underlying merits, it follows that district courts also may not. *See id.* Bowling fails to appreciate the different jurisdictional consequences that 28 U.S.C. § 2253 has for courts of appeal. *Miller-El* held that courts of appeal could not decline an application for a COA based on the appeal's underlying merits because it would be "in essence deciding an appeal without jurisdiction." 537 U.S. at 337. But a district court's jurisdiction over a habeas claim is not predicated on a COA having issued. In fact, a COA cannot issue until the district court has addressed the underlying claim, either by applying a procedural bar or addressing its merits. *See* 28 U.S.C. § 2253(c)(1)(A). Thus, there is nothing improper about a district court relying on its merits determination when issuing the COA so long as it applies those considerations in light of § 2253(c)'s more forgiving standard. And that is precisely what the Court did. *See* R. 260 at 1–2. If this Court had merely regurgitated its merits determination, it would not have granted a COA on any issues.

Second, Bowling fails to appreciate how this Court's two-step approach furthered "the gate keeping function of certificates of appealability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001). This Court issued its ruling identifying which particular issues, in its view, clearly met the standard set forth in *Slack*. *See* R. 260 at 1–2 (citing *Slack*, 529 U.S. at 484). It then invited the parties to file a motion for reconsideration if they felt that the number of issues should be expanded or reduced. *See id.* at 1, 3. By doing so, the Court

saved Bowling and the Commonwealth the time and effort of needlessly briefing issues that the Court had already determined were worthy of a COA.  Granted, the Sixth Circuit has held that it is error for a district court to issue blanket COA rulings, either granting or denying a COA on *all* of a defendant's claims.  *See Porterfield*, 258 F.3d at 486−87 (holding that a blanket grant or denial of all claims is error).  But the Court of Appeals has never held that the two-step approach taken here by the Court—one that facilitated a more efficient, individualized analysis of the petitioner's claims—is error.

## II.   Bowling's Claims

As an initial matter, Bowling fails to appreciate the limits of habeas review in making his arguments.  There are two key distinctions—appearing throughout this Memorandum Opinion and Order—between the cases Bowling relies on and this Court's review of his claim.  Bowling often simply cites the fact that two Kentucky Supreme Court Justices dissented in his direct appeal as if it were conclusive proof that a COA should issue on a claim.  *See, e.g.*, R. 262 at 8−10.  Other times he relies on dissents in cases holding that defendants in his position do not have a viable constitutional claim.  *See, e.g.*, R. 262 at 7−8; *see also* R. 161 at 2−3 (explaining the cases that Bowling's motion for reconsideration relies on).  Most of the cases Bowling relies are therefore irrelevant to the COA inquiry under § 2253(c).

First, the state-court dissent does not address federal constitutional issues, which are the only basis for a COA under § 2253(c).  The passages from the dissent that Bowling relies on apply Kentucky case law.  *See, e.g.*, R. 262 at 8−9 (citing state-court dissent's application of Kentucky's voir dire doctrine).  As will become clear when analyzing the relevant claims

4

below, that state law differed meaningfully from the federal constitutional precedent this Court applied under federal habeas review.  The question under § 2253(c) is not whether reasonable jurists could debate the merits of the state court's interpretation of state law.  It is whether they could debate this Court's assessment of Bowling's *federal* constitutional claims.  *See Miller-El*, 537 U.S. at 336.

Second, Bowling ignores how the COA inquiry functions when the district court applies AEDPA deference under § 2254(d).  Often, his argument effectively adopts a per se rule that whenever a judge dissents on direct appeal, or in an analogous case, a COA should issue.  *See, e.g.*, R. 262 at 7–8, 8–10, 14–15.  Bowling's approach asks this Court to ignore *Miller-El*'s clear instruction that the COA inquiry "look to the District Court's *application of AEDPA* to petitioner's claims and ask whether *that resolution* was debatable amongst jurists of reason."  537 U.S. at 336 (emphasis added); *see also id.* at 349–50 (Scalia, J., concurring) (explaining that, after *Miller-El*, judges "must deny a COA, even when the habeas petitioner has made a substantial showing that his constitutional rights were violated, if all reasonable jurists would conclude that a substantive provision of the federal habeas statute bars relief").

Unmooring the COA inquiry from the substantive requirements of AEDPA not only defies the Supreme Court's holdings in *Miller-El* and *Slack*, it also contravenes the basic goal of the AEDPA statute.  *See id.* at 336–37; *Slack*, 529 U.S. at 483–85.  AEPDA seeks to promote "comity, finality, and federalism" by making the state courts the primary venue for resolving state prisoners' constitutional claims.  *Michael Williams v. Taylor*, 529 U.S. 420, 436 (2000).  Bowling's approach would frustrate those goals by having federal appellate courts review claims despite the fact they are not debatable under § 2254(d).  *Compare*

5

R. 262 at 14–15 (relying on a dissent by two dissenting Kentucky Justices asserting that the majority misapplied Kentucky's voir dire doctrine on direct appeal), *with* R. 259 (relying on the Supreme Court's admonition that federal courts must "respect the limited role of federal habeas relief" in issues of voir dire questioning (quoting *Uttecht v. Brown*, 551 U.S. 1, 9 (2007))).   Reviewing such claims would unnecessarily delay the resolution of a habeas petition, which frustrates AEDPA's finality goal.   Reviewing those claims would also contravene AEDPA's comity principle by putting federal courts of appeal in a position of pedantically reviewing a state court's decision when that review is clearly not needed.

### A.    Claims 6 and 36 – Proportionality Review

In Claims 6 and 36, Bowling argued that Kentucky's statutory scheme establishing proportionality review of death sentences by the Kentucky Supreme Court violated his constitutional rights.   *See* R. 159 at 112–25 (Claim 6), 186–87 (Claim 36).   This Court rejected those claims because neither the Kentucky Supreme Court's ruling nor the statute it applied were contrary to, or unreasonable applications of, clearly established federal law. R. 245 at 16–21.   In his motion for reconsideration, Bowling points out that the Sixth Circuit recently issued a COA on the issue of whether Kentucky's statutory scheme is constitutional. *See* R. 262 at 5–6 (citing *Wheeler*).   That decision did not provide reasons for why the Sixth Circuit chose to grant a COA.   *See* Order, *Wheeler v. Simpson*, No. 11-5707 (6th Cir. June 19, 2012) (issuing a COA on the claim that "Kentucky's proportionality review of the death penalty is unconstitutional").   Without an explanation from the Sixth Circuit to guide its decision, this Court will assume that the reasons for the decision in *Wheeler* apply here as well.   Thus, this Court defers to the Circuit's judgment, and will issue a COA on Claims 6

and 36 limited to the same question presented in *Wheeler*:  Whether Kentucky's statutory scheme for proportionality review of capital sentences is constitutional.

### B.    Claim 12 – Instruction on Unanimity for Mitigating Circumstances

Claim 12 argued that an ambiguity in the jury instructions could have led the jurors to believe they had to unanimously find a mitigating circumstance to refrain from imposing the death penalty.  *See* R. 159 at 139−51 (citing, *inter alia*, *Mills v. Maryland*, 486 U.S. 367, 384 (1988).  This Court, applying § 2254(d), rejected that claim because the Sixth Circuit in *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1121 (6th Cir. 1990) (en banc) (Opinion of Kennedy, J.), upheld the use of instructions which were "materially the same" as the ones Bowling received.  R. 245 (quoting R. 159 at 144).  Bowling now urges this Court to issue a COA based on the five-judge dissent in *Kordenbrock* and dicta from a panel decision in *Mapes*.  R. 262 at 7−8 (citing the district court's order in *Woodall*); *see also Woodall v. Simpson*, No. 5:06-216-TBR, 2009 WL 464939, at *28 (W.D. Ky. Feb. 24, 2009) (citing *Kordenbrock*, 919 F.2d at 1110 (Merritt, C.J., dissenting in part) and *Mapes v. Coyle*, 171 F.3d 408, 418−19 (6th Cir. 1999)).  His argument fails to account for the role § 2254(d) plays when conducting a COA inquiry under § 2253(c).

*Kordenbrock* forecloses any reasonable debate on this Court's application of § 2254(d) to Claim 12, which settles the COA inquiry under *Miller-El*.  *See* 537 U.S. at 336 (holding that the COA inquiry turns on whether "the District Court's application of AEDPA [] was debatable amongst jurists of reason").  Bowling admits that the jury instructions he challenges are "identically worded" and "indistinguishable" from the instructions approved in *Kordenbrock*.  R. 262 at 7 (quotation omitted).  And though *Kordenbrock* has been

7

distinguished on other grounds in later cases, it is still good law and binding precedent in the Sixth Circuit. *See Williams v. Anderson*, 460 F.3d 789, 810–12 (6th Cir. 2006); *see also Coe v. Bell*, 161 F.3d 320, 338 (6th Cir. 1998) (explaining that *Kordenbrock* "held that the only reasonable reading of the instruction was that, by omission, no unanimity was required as to mitigating factors"). Thus, *Kordenbrock* is undeniable evidence that fairminded jurists could agree with the Kentucky Supreme Court that Bowling's jury instructions passed constitutional muster. Consequently, it is irrefutable proof that this Court applied § 2254(d) correctly, because all § 2254(d) requires is a "possibility" that fairminded jurists would approve the state court's application of Supreme Court precedent. *Harrington v. Richter*, 131 S. Ct. 770, 785–86 (2011) (holding that § 2254(d) bars federal habeas relief if "fairminded jurists could disagree on the correctness of the state court's decision (internal quotation marks omitted)); *see also Moore v. Johnson*, 225 F.3d 495, 503–04 (5th Cir. 2000) (holding that a COA will not issue where circuit precedent forecloses the claim). Thus, no COA will issue on Claim 12.

### C.    Claim 4 – Victim Impact Testimony

Claim 4 argued that the trial court violated Bowling's constitutional rights by allowing the victims' families to testify at the sentencing phase of his trial. *See* R. 1 at 80; R. 159 at 101–06. This Court rejected his claim because the Kentucky Supreme Court's affirmation of the trial court was not objectively unreasonable under *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). R. 259 at 145–54. The only grounds that Bowling offers for issuing a COA on this claim is the dissent of two Kentucky Justices hearing his direct appeal. *See* R. 262 at 8–9.

8

Bowling's argument for a COA on Claim 4 fails to appreciate the standard applied in federal habeas review. The fact that two state-court justices, citing only state law, dissented in a defendant's direct appeal does not speak to whether a federal district court's application of federal constitutional law is debatable, the relevant question for a COA. *Cf. Slack*, 529 U.S. at 484 (limiting the COA issue to whether "reasonable jurists would find the district court's assessment of the [federal] constitutional claims debatable or wrong"). The dissent Bowling cites says nothing about the application of *Payne*.[2] The dissenting Kentucky Justices cited only state decisions to support their conclusion that the testimony at issue was unfair. *See Bowling v. Commonwealth*, 942 S.W.2d 293, 309–10 (1997). And those state decisions not only predate *Payne*, they place far greater limits on sentencing testimony than *Payne* did. Specifically, *Payne* held that evidence "demonstrating the loss to the victim's family and to society" was constitutionally permissible, 501 U.S. at 822, while the Kentucky precedent the dissent relied on barred such evidence, *see Morris v. Commonwealth*, 766 S.W.2d 58, 61 (Ky. 1989) (condemning emotive evidence about the victim's standing in the community (citing *Booth v. Maryland*, 482 U.S. 496 (1987), *overruled by Payne*, 501 U.S. 808)); *Sanborn v. Commonwealth*, 754 S.W.2d 534, 542–43 (Ky. 1988) (forbidding evidence of the victim's standing in the community or the crime's impact on the family). The Kentucky precedent also condemned testimony with emotive power, which *Payne* again explicitly affirmed as constitutionally permissible. *Compare Ice v. Commonwealth*, 667 S.W.2d 671, 675–76 (Ky. 1984) (finding presentation of pictures of the murdered children

---

[2] Bowling's assertion that it can be inferred that the dissent was applying *Payne* from the fact that the majority applied *Payne* in its decision is untenable. *See* R. 262 at 9. All of the reasoning applied by the dissent is based on Kentucky law. To conclude that the dissent was implicitly applying *Payne* while explicitly applying Kentucky's more restrictive state-law standard would be unreasonable.

and testimony by their mother about her loss improper), *with Payne*, 501 U.S. at 826 ("[T]he testimony illustrated quite poignantly some of the harm that [the defendant's] killing had caused; there is nothing unfair about allowing the jury to bear in mind that harm at the same time as it considers the mitigating evidence introduced by the defendant."). Given Kentucky law's much more restrictive limits on sentencing testimony, the dissent's arguments do not speak to the validity of Bowling's federal constitutional claim.

Bowling has not made a substantial showing of the denial of a *federal* constitutional right. Instead, he has established that the Kentucky Supreme Court's application of Kentucky law is debatable. Such a showing is of no consequence under § 2253(c)(2). *See Miller-El*, 537 U.S. at 336−37. Thus, a COA will not issue on Claim 4.

### D.      Claim 1 – Denial of a Motion for a Change of Venue

Claim 1 argued that the trial court erred in denying Bowling's motion for a change of venue. R. 159 at 46−52. This Court construed his claim as asserting both presumed and actual prejudice, even though Bowling's brief conflated the two theories. *See* R. 245 at 11. This Court denied the claim under both theories because Bowling failed to establish prejudice under the relevant standards set by the Supreme Court. *See id.* at 12. Bowling now argues that reasonable jurists might have come out the other way, so a COA should issue. In support of his argument, he points to a snippet of the dissent from the Kentucky Supreme Court's denial of his direct appeal. *See* R. 262 at 9–10. However, the state-court dissent does not justify a COA because it says nothing about the trial court's ruling on Bowling's motion to change venue. And even if it did apply to the trial court's venue ruling, the dissent does

not cast doubt on this Court's determination that Bowling suffered no prejudice to his constitutional rights.

Bowling uses selective quotations to mischaracterize the Kentucky Justices' dissent as disagreeing with the trial court's venue ruling. *See* R. 262 at 9. The dissent did assert that the "jury panel was clearly biased due to the publicity surrounding the trial." *Bowling*, 942 S.W.2d at 309 (Stephens, C.J., dissenting). But, read in the context of the entire opinion, it is clear that the dissent's claim is not about venue. Instead, the passage Bowling quotes refers to one individual whom the trial court refused to strike for cause during voir dire: Nellie Cole. Under a heading titled "Jury Selection," the dissent identifies three jurors that should have been struck for cause. *See id.* at 309. Of those three, only Cole is described as having been exposed to newspaper coverage of the murders, and she did not serve on the jury because she was struck by a peremptory challenge. *Id.* The dissenters claim that Bowling was forced to use a peremptory challenge to remove her from the jury pool, not that the trial court erred in denying Bowling's motion for venue. *See id.*[3] That is an issue of state law. *See* Claim 2, *infra* (discussing *Rivera v. Illinois* and *Shane v. Commonwealth*). Therefore, the dissent does not provide any basis for debating whether the trial court denied Bowling's federal constitutional rights. *See Miller-El*, 537 U.S. at 336–37.

---

[3] Reading the full passage makes the limited focus of the dissent's statement clear: "Considering the totality of the circumstances in the instant case, the jury panel was clearly biased due to the publicity surrounding the trial, close relationships between prospective jurors and investigating police officers, as well as some expressions of preconceived notions of guilt before the trial began. Nellie Cole and Rebecca Jones were both struck by defense peremptory challenges while Cleda Creech served on the jury." *Bowling*, 942 S.W.2d at 309 (Stephens, C.J., dissenting). The fact that the remaining paragraphs in the section analyze only those three jurors without making any reference to a change in venue establishes that the dissent's focus was the trial court's refusal to strike those three jurors for cause. *See id.* The word "venue" does not even appear in the dissent. *See id.* at 308–09.

Furthermore, because Cole was removed by peremptory challenge, it is beyond dispute that the trial court's failure to strike her for cause did not prejudice Bowling's constitutional rights. *See Skilling v. United States*, 130 S. Ct. 2896, 2923 & n.31 (2010) (holding that a defendant is not deprived of "any [] constitutional right" where no partial juror sat on the jury (quotation and alterations omitted)). The well-established principle enunciated in *Skilling* forecloses any reasonable argument about this Court's resolution of Bowling's federal constitutional claim. *See Miller-El*, 537 U.S. at 336−37.

Since Bowling has not presented any evidence suggesting that reasonable jurists would debate the trial court's venue ruling or this Court's decision on the federal constitutional issue, a COA will not issue on Claim 1.

### E.  Claim 8 – Confidential and Independent Expert

At trial, the prosecution called Jeffrey Scott Doyle, a firearms examiner for the Kentucky State Police, as an expert witness. *See* R. 245 at 23−24, 27−28. Claim 8 alleged that Doyle's testimony violated Bowling's constitutional right to an independent expert because the trial court had ordered Doyle to send his reports only to the defense. R. 159 at 126−33. This Court, applying § 2254(d), rejected the claim. R. 245 at 23−30. It concluded that because there is no clearly established general right to a ballistics expert, there cannot logically be a more specific right to a confidential and independent ballistics expert. *Id.* at 26−27. In his motion for reconsideration, Bowling cites the Sixth Circuit's decision in *Babick*—a case absent from his earlier briefs—and claims that it demonstrates the debatability of this Court's decision. *See* R. 262 at 10−11 (citing *Babick v. Berghuis*, 620 F.3d 571 (6th Cir. 2010)). While *Babick* does acknowledge that the Supreme Court's

decision in *Ake v. Oklahoma* might extend beyond the mental-health-expert context, it does not suggest that individuals in Bowling's position have the right to a confidential independent expert. *Babick*, 620 F.3d at 579 (citing *Ake*, 470 U.S. 68, 86–87 (1985)). And Bowling offers no other evidence showing that any court has held that defendants have such a right under *Ake*.

A close reading of *Babick* reveals that it does not stand for the broad proposition Bowling claims it does. In *Babick*, a habeas petitioner claimed that a state prosecutor violated his right to a state-paid expert witness to testify about the arson issues in his trial. *Babick*, 620 F.3d at 579. Babick was accused of setting a fire that killed two young boys. *Id.* at 574. His public defender received court approval to retain an arson expert and then seek reimbursement for his fees from the state. *Id.* at 579. The state prosecutor sent a letter to his attorney directing her to send expert-witness bills to another state agency, and not to the prosecutor's office. *Id.* Babick argued that the letter interfered with his right to expert assistance under *Ake* by discouraging defense counsel from retaining an arson expert. *Id.* The *Babick* panel acknowledged that the courts of appeal have split over whether the right to expert assistance under *Ake* "extends to non-psychiatric experts as well." *Id.* However, the panel did not resolve the issue because there was no indication that the prosecutor's letter had any effect on defense counsel's decision to retain an arson expert. *Id.* The panel never contemplated whether *Ake* guarantees expert assistance that is both confidential and independent.

Moreover, if the issue were debatable, surely some court in the nearly twenty-eight years since *Ake* was decided would have found a constitutional right to confidential,

13

independent expert assistance.  But the Court's research has not revealed any decision finding a right to a confidential and independent expert—in any field—under *Ake*.  And Bowling did not identify any such cases in either his habeas petition or his motion for reconsideration.  *See* R. 159 at 126−33; R. 262 at 10−11.

Bowling has failed to make either of the necessary showings to justify a COA on this claim.  First, he presents nothing indicating that this Court's interpretation of *Ake*'s limits is debatable.  Second, he fails to identify any decision even suggesting that the Court ignored a clearly established right to such expert assistance.  He has consequently not shown that this Court's application of § 2254(d) is subject to reasonable debate.  *See Miller-El*, 537 U.S. at 336−37; *see also id.* at 349−50 (Scalia, J., concurring) (explaining that both showings are required).  Therefore, no COA will issue on Claim 8.

**F.   Claims 54, 57, and 60 – Trial Court Rulings on Bowling's Mental Health Expert**

Bowling seeks reconsideration on three claims that challenged how the trial court handled Bowling's motion for an evaluation by an independent neuropsychologist.  R. 262 at 13−14.  In his habeas petition, he challenged:  (1) the trial court's decision to provide funding for a psychiatrist rather than a neuropsychologist, *see* R. 1 at 276 (Claim 57); (2) the trial court's refusal to grant him an "independent expert witness," *see id.* at 270 (Claim 54); and (3) the trial court's decision to appoint a neutral expert from the Kentucky Correctional Psychiatric Center, *see id.* at 289 (Claim 60).  All three claims presupposed that a defendant in Bowling's position had a constitutional right to a mental-health expert at the penalty

phase.[4]  This Court applied § 2254(d) and denied all three on the same grounds:  The right to expert assistance announced by the Supreme Court in *Ake*, 470 U.S. at 86–87, does not apply to defendants such as Bowling who do not plan to use the expert's testimony at trial.  R. 259 at 140–45.

Even the most generous reading of *Ake* does not extend a right to expert assistance to defendants like Bowling.  In *Ake*, the Supreme Court held that a defendant has a right to a state-funded psychiatrist if he plans to assert an insanity defense at trial or the prosecution planned to present psychiatric evidence of his future dangerousness.  *Ake*, 470 U.S. at 82−84. *Ake*'s rationale was simple.  Due process in an adversarial system requires that indigent defendants be given the tools to present their own defense and to counter the prosecution's case against them.  *Id.*  If a defendant's mental condition is "likely to be a significant factor at trial," then he has a right to expert assistance.  *Id.* at 74, 82.  The logical corollary is that, where a defendant does not plan to use an expert to bolster his own innocence defense or counter the government's expert evidence, he has no right to funding.  Such was the case with Bowling.  He did not plan to use a neuropsychologist as part of his defense at the guilt phase, and the prosecution did not present any psychological evidence against Bowling in the penalty stage.  Thus, this Court found that Bowling had no right to expert assistance under *Ake*.  *See* R. 259 at 140–45.  The Sixth Circuit has affirmed this logic at least four times.  *See id.* at 141 (collecting cases).

---

[4] Of course, Bowling's "position" included the strategic decision he made with his attorneys to forego investigating or presenting evidence of his alleged diminished capacity in order to make the best innocence defense possible.  *See* R. 259 at 117.  Bowling glossed over this fact in making his habeas claims.  That strategic decision undermines his claim to expert assistance under *Ake*.  *See id.* at 141–42.

The one case that Bowling cites, *Babick*, does not show that a reasonable jurist would debate this Court's decision on Claims 54, 57, and 60.  R. 262 at 14 (citing *Babick*, 620 F.3d 571).  First, the only uncertainty that *Babick* acknowledged was whether the Supreme Court's decision in *Ake v. Oklahoma* extends to experts outside the mental-health field.  *See Babick*, 620 F.3d at 579 (citing cases addressing funding for unspecified nonpsychiatric experts (*Baxter*), forensic and ballistic experts (*Yohey*), a hypnotist (*Armontrout*), a pathologist (*Terry*), and a blood-spatter expert (*Tinsley*)).  *Babick* did not mention any of the Sixth Circuit cases addressing mental-health experts that this Court relied on in resolving Bowling's claim.  Nor should it have.  *Babick* dealt with alleged interference with the defense's arson expert for the guilt phase, not a mental-health expert at the penalty phase where guilt is not an issue.  *See id.*

Second, all of the cases that *Babick* cites follow the basic principle this Court relied on in making its decision.  Even the cases that extend *Ake* beyond the mental health arena do not question that defendants' right to expert funding is contingent on that expert's testimony being a major focus at the trial.  In every case, the defendant either:  (1) required expert assistance to mount an innocence defense at the guilt stage, *see Babick*, 620 F.3d at 579 (citing *Terry*, *Tinsley*); or (2) needed expert testimony to dispute evidence presented by the government, *see id.* (citing *Yohey*, *Baxter*, *and Armontrout*).  Neither *Babick* nor any of the cases it cites so much as hint at a broader right to expert funding.  And Bowling offers no evidence that, when the trial court ruled on Bowling's motion, his mental health would be a major focus of the trial.  Therefore, *Babick* provides no basis for questioning this Court's decisions.

Like Claim 8 above, Bowling's reliance on *Babick* prevents him from making either of the necessary showings to justify a COA.  He provides no evidence that reasonable jurists would debate this Court's resolution of Bowling's underlying constitutional claims—let alone evidence they might debate its application of § 2254(d).  Thus, no COA shall issue for any of these three claims.

### G.    Claim 55 – Ineffective Assistance for Accepting the Trial Court's Assignment of a State Expert

Claim 55 asserted that Bowling's "trial counsel was ineffective for ultimately conceding that a non-independent psychologist . . . could be a sufficient substitute for a neuropsychologist."  R. 159 at 257.  Claim 55 rested on the premise that Bowling had a right to an *independent* mental health expert.  This Court rejected his claim because, among other reasons,[5] the Sixth Circuit has repeatedly rejected the notion that defendants have such a right.  *See* R. 259 at 131 (citing *Smith v. Mitchell*, 348 F.3d 177, 207–08 (6th Cir. 2003) (holding that a defendant has no right under *Ake* to "independent expert assistance," that "a friend of the court' appointment" satisfies *Ake*, and that the Constitution "does not entitle [a defendant] to the psychiatrist of his choosing") and *Wogenstahl v. Mitchell*, 668 F.3d 307, 340 (2012)).  Those cases provide clear evidence that "fairminded jurists" would accept the state court's decision as correct.  *Richter*, 131 S. Ct. at 786.

In his motion for reconsideration, Bowling relies on the same argument (based on *Babick*) that he made under Claims 54, 57, and 60.  *Compare* R. 262 at 12−13 (arguing that *Babick* casts doubt on *Smith*), *with id.* at 13−14 (same).  For the reasons previously given,

---

[5] The Court also found that Bowling had not established deficient performance or prejudice under *Strickland*. *See* R. 259 at 132−33.

*Babick* is as inapplicable to Claim 55 as it was to Bowling's other claims.  Therefore, a COA will not issue on Claim 55.

### H.      Claim 2 – For-Cause Challenges

Claim 2 of Bowling's petition alleged that the trial court erred in refusing to strike eighteen potential jurors for cause during voir dire.  R. 159 at 52–90.  The claim included eighteen sub-claims, one for every potential juror named in the claim.  The Court's opinion grouped those sub-claims into two groups—those who served on his jury and delivered verdict and those who did not.  R. 259 at 26.  It did so because the former group raises constitutional concerns that the latter group does not.  *See id.*  Bowling seeks a COA on one sub-claim for a juror who actually served, and a COA on all the sub-claims for the nine prospective jurors he peremptorily struck.  R. 262 at 14–19.

*Cleda Creech:*   Bowling seeks a COA for his sub-claim based on Cleda Creech.  R. 262 at 14–15.  During voir dire, Creech was initially confused by the defense attorney's question, and answered that she could not consider "20 years" for the murder of two people.  *See* 5 T.E. 757; *see also id.* at 758–59 ("I guess I misunderstood . . . .").  After the trial court clarified the issue, she agreed that she could consider the full range of punishment as the law required.  *See id.* at 758–62.  Bowling's petition argued that Creech was not impartial and that her presence on the jury violated his right to an impartial jury.  R. 159 at 80.  This Court, applying § 2254(d), rejected that claim because the Supreme Court has found that initial confusion about a voir dire question should not disqualify a juror.  *See* R. 259 at 34–35 (citing *Gray v. Mississippi*, 481 U.S. 648, 653 (1987) and *id.* at 659 (Powell, J., concurring in part and concurring in the judgment)).  Bowling's motion for reconsideration argues that a

COA should issue based on the dissent in his direct appeal—a dissent that relied exclusively on state law and ignored the fact that Creech's first answer was the result of confusion.  *See* R. 262 at 14–15.  Since the *Bowling* dissent did not apply the Supreme Court precedent that controlled this Court's decision, it does not provide grounds for reconsideration.

First, the dissenting Kentucky Justices relied on state law that is inapplicable to this Court's resolution of Bowling's federal habeas claim.  The dissenters argued that the trial court's rehabilitation of Creech was improper under Kentucky Supreme Court precedent. *Bowling*, 942 S.W.2d at 309 ("This type of 'rehabilitation' was condemned in *Montgomery* [i, 819 S.W.2d 713, 718 (Ky. 1992)] and does not cure the bias of the juror.").  But the United States Supreme Court's precedent requires the very type of rehabilitation that the *Bowling* dissenters condemned.  *Gray v. Mississippi*, 481 U.S. at 653, established automatic reversal where trial courts strike jurors for cause who are initially confused by the voir dire questions but ultimately confirm that they can perform their duty as jurors.  *See* R. 259 at 31–32, 34–35.  The fact that the two dissenters reached a different result based on state law does not speak to the debatability of this Court's decision about the federal constitutional issue.

Second, the dissenting Kentucky Justices totally ignore the fact that Creech was initially confused by defense counsel's voir dire question.[6]  While this is most likely because they were applying Kentucky law (which does not seem to acknowledge juror confusion as grounds for rehabilitation), the dissenters glossed over the fact that Creech's initial answer

---

[6] Contrary to Bowling's claim that the dissent simply reached a different factual conclusion than this Court, *see* R. 262 at 15, the *Bowling* dissent does not acknowledge why Creech gave the answer she did, *see Bowling*, 942 S.W.2d at 309.

19

was the result of confusion. *See* 5 T.E. at 758−62. Thus, not only did the dissent apply a different body of law, it effectively asked a different question:  Assuming that Creech's answer was the result of bias, was the trial court's rehabilitation improper under Kentucky law?  That was not the question this Court—or federal constitutional law—asked.  The federal constitutional question was whether, given the initially confusing nature of Creech's voir dire, the trial court should have struck her for cause.  The answer to that question was clearly "No."  *See* R. 259 at 34−35.  And since Bowling offers no evidence of the debatability of the underlying federal constitutional question, a COA will not issue on this sub-claim.

**Peremptorily Struck Jurors:**  Bowling also seeks a COA for the sub-claims based on the nine individuals he peremptorily struck from the jury pool.  R. 262 at 15−19.  This Court rejected those sub-claims as clearly foreclosed by the Supreme Court's decision in *Rivera v. Illinois*, 556 U.S. 148 (2009), which held that violations of state-law peremptory rights do not implicate the federal Due Process Clause.  R. 259 at 44.  All Bowling offers in support of a COA are a misreading of *Rivera* and a citation to a pre-*Rivera* district court case.  R. 262 at 15−17.  Obviously, neither justifies a COA.

Bowling's habeas petition attempted to distinguish his claim from prior Supreme Court decisions based on an unusual feature of Kentucky law.  Supreme Court precedent holds that individuals who do not sit on the jury, deliberate, and deliver the verdict cannot affect the defendant's constitutional right to an impartial jury.  *See* R. 259 at 43 (collecting cases).  Bowling's habeas petition tried to distinguish those cases by claiming that Kentucky's peremptory challenge law requires a different outcome in his case.  R. 159 at

54–55.  The Kentucky Supreme Court has determined that when a trial court's erroneous ruling on a defendant's for-cause challenge forces her to exhaust all her peremptory challenges, the defendant is entitled to automatic reversal.  *See Shane v. Commonwealth*, 243 S.W.3d 336, 341 (Ky. 2007).  Bowling seized on that decision, arguing that the trial court's erroneous rulings on his for-cause challenges unduly forced him to exhaust his peremptory challenges and thus violated his right to freely exercise his peremptory challenges.  R. 159 at 54–55.

This Court rejected that argument as clearly foreclosed by the Supreme Court's decision in *Rivera*.  R. 44–45.  There, the Supreme Court held that the fact a defendant was erroneously denied an opportunity to exercise his state-law peremptory rights was of no constitutional consequence.  *Rivera*, 556 U.S. at 152, 156–62.  The Justices reaffirmed the principle that, so long as no biased juror sits on the jury, denying a defendant's state-law right to peremptory challenges is "not constitutionally significant."  *Id.* at 159.

Bowling initially challenges this Court's decision by offering a tortured reading of *Rivera*.  *See* R. 262 at 16.  He takes one clause from the opinion, ignores its context, and uses it to justify a result that contravenes all of the reasoning in *Rivera*.  Bowling quotes *Rivera*'s statement that "state law determines the consequences of the erroneous denial of such a challenge."  R. 262 at 16 (quoting *Rivera*, 556 U.S. at 152).  Based on this isolated clause, he argues that the federal Due Process Clause incorporates Kentucky law's automatic reversal rule for defendants who exhaust their peremptory challenges removing jurors that the trial court should have struck for cause.  *See id.*  But reading the full passage from *Rivera* makes

21

it clear that the consequences set by state law do not matter under the federal Due Process Clause. The full paragraph reads:

> The right to exercise peremptory challenges in state court is determined by state law. This Court has long recognized that peremptory challenges are not of federal constitutional dimension. States may withhold peremptory challenges altogether without impairing the constitutional guarantee of an impartial jury and a fair trial. *Just as state law controls the existence and exercise of peremptory challenges, so state law determines the consequences of an erroneous denial of such a challenge.* Accordingly, we have no cause to disturb the Illinois Supreme Court's determination that, in the circumstances Rivera's case presents, the trial court's error did not warrant reversal of his conviction.

*Rivera*, 556 U.S. at 152 (internal quotations and citations omitted, emphasis added). The meaning of the passage Bowling cites is clear: Just like the right to peremptory challenges is a purely state-law issue, the consequences that state law attaches to violating those rights have no constitutional impact. The passage therefore commands the opposite result that Bowling claims it does.

Furthermore, the logical implication of Bowling's reading defies *Rivera*'s repeated admonitions that federal due process rights do not turn on the particulars of state law. Bowling baldly asserts—with no supporting authority whatsoever—that this Court should have reached a different outcome in his case because of the nature of Kentucky law. R. 262 at 16. In other words, because Kentucky requires automatic reversal when a defendant exhausts his peremptory challenges while Illinois does not, Bowling has a constitutional right that Rivera does not. *Id.* This assertion blatantly contradicts *Rivera*'s repeated admonition that peremptory challenges are creatures of state law, and "[a] mere error of state law . . . is not a denial of due process." 556 U.S. at 158 (internal quotation marks omitted); *see also id.* (declaring that the federal Due Process Clause "safeguards not the meticulous observance of

22

state procedural prescriptions, but the fundamental elements of fairness in a criminal trial" (internal quotation marks omitted)).   The fact that Kentucky values peremptory challenges more than other states, and attaches more severe consequences to trial court rulings that impair those rights, is "not constitutionally significant."  *Id.* at 159.  Therefore, *Rivera* does not offer any basis for a reasonable jurist to disagree with this Court's decision.

Bowling also claims that *Harlow v. Murphy*, No. 2:05-cv-39-CAB, R. 210 (D. Wyo. May 10, 2008) [hereafter, "*Harlow*"], demonstrates that reasonable jurists could debate this Court's decision.  R. 262 at 16.  In *Harlow*, the Wyoming district court granted a state prisoner's habeas petition based in part on the trial court's refusal to allow him adequate questioning of potential jurors in voir dire.  *See Harlow* at 155−88.  That case has no bearing on this Court's decision.  First, *Harlow* is a pre-*Rivera* decision that cannot cast doubt on the clear consequences dictated by *Rivera*'s holding.   Second, Bowling mischaracterizes the grounds for the district court's decision.  He asserts that the district court found a habeas petitioner's claim that he was "required to use a peremptory challenge against a person who should have been excused for cause can be reviewed in federal habeas proceedings."  R. 262 at 17 (citing *Harlow* at 185 n.12).  The *Harlow* court expressly disavowed any such holding in the first sentence of the very footnote Bowling cites.  The court declared that its "decision is not based upon the belief that Mr. Harlow's constitutional rights were violated because he was forced to waste peremptory strikes on automatic death jurors."  *Harlow* at 185 n.12. Therefore, even if *Harlow* were still relevant after *Rivera*, it provides no evidence that a reasonable jurist to debate this Court's decision.

Since Bowling has not demonstrated that this Court's resolution of the underlying constitutional issue in either sub-claim is reasonably debatable, a COA will not issue for Claim 2.

### I.      Claim 15 – Unconstitutionally Limited Voir Dire

Claim 15 of Bowling's petition alleged that the trial court violated his constitutional rights by impermissibly limiting his questions during voir dire.  *See* R. 1 at 118–20; R. 159 at 159–61.  This Court denied the claim for two reasons.  First, none of the eight people Bowling claims he was unable to fully question during voir dire actually served on the jury.  *See* R. 259 at 45.  Second, the Kentucky Supreme Court's affirmation of the limits that the trial court placed on voir dire questioning was not objectively unreasonable.  *See id.* at 46–49.

Bowling's motion for reconsideration challenges the second reason, but says nothing about the first.  *See* R. 262 at 19–20.  Indeed, it is hard to imagine that there is much he could have said.  It is clear that none of the trial court's voir dire rulings that Bowling challenges in Claim 15 involved individuals who actually sat on the jury and delivered a verdict.  *See* R. 259 at 45.  That undeniable fact defeats any challenge Bowling could make based on their questioning.  The Supreme Court has repeatedly held that defendants' constitutional jury rights are not implicated by individuals who did not sit on the jury and render a verdict.  *See, e.g.*, *Skilling*, 130 S. Ct. at 2923 & n.23 (holding that the defendant was not deprived of "any constitutional right" where no partial juror sat on the jury (quotation and alterations omitted)); *Morgan v. Illinois*, 504 U.S. 719, 726 (1992) (requiring that a claim show that a biased juror "is empaneled and the death sentence is imposed"); *Ross*, 487 U.S. 81, 85 (1988)

24

(holding that "[a]ny claim that the jury was not impartial" rests "on the jurors who ultimately sat"). The lone district court case that Bowling cites does not cast doubt on that well-established principle. *See Harlow* at 185 n.12 (explaining that the jurors who sat on the defendant's jury panel were not adequately questioned).

The Court's ruling on Claim 15 is therefore not subject to reasonable debate and a COA will not issue on the claim.

### J.      Claim 3 – Evidence of the Mt. Vernon Shooting

Claim 3 argued that the trial court violated Bowling's substantive due process right by permitting Ricky Smith to testify that Bowling attempted to shoot him at the Sunoco Station in Rockcastle. R. 159 at 90–100; *see also Bowling*, 942 S.W.2d at 300–01 (providing greater detail about Smith's testimony). The trial court gave the jury the limiting instruction that Bowling requested, telling the jurors they could "not consider any alleged acts, of any alleged criminal activity, as to Rockcastle County, as evidence of guilt as to the charges here in Laurel County." 19 T.E. 2808–10. On habeas, Bowling argued that the instruction he requested at trial was "fundamentally unfair" because it did not specifically instruct the jury on the incriminating inferences they could draw from the evidence. R. 159 at 90–92. Out of an abundance of caution, this Court reviewed his claim de novo, though it is now clear that § 2254(d) applies.[7] This Court rejected Bowling's claim on two general grounds. First, the

---

[7] This Court forewent § 2254(d) review because it was unnecessary to resolve the claim and because a case pending before the Supreme Court would resolve the issue of whether § 2254(d) applied in such instances. *See* R. 259 at 66–67 (citing *Cavazos v. Williams*, 132 S. Ct. 1088 (2012)). The Supreme Court has now issued a decision confirming that § 2254(d) does apply. *See Johnson v. Williams*, --- S.Ct. ---, 2013 WL 610199 (U.S. Feb. 20, 2013). The state law that the Kentucky Supreme Court applied is a more protective standard than that contained in the federal Due Process Clause. *Compare Bowling*, 942 S.W.2d at 300–01 (applying Kentucky Rule of Evidence 404(b), which allows evidence of other crimes, wrongs or acts so long as they are "sufficiently probative"), *with United States v. Lovasco*, 431 U.S. 783, 790 (1977) (barring only evidence that "violates those fundamental

Supreme Court has repeatedly held that state-law evidentiary rulings, such as the limiting instruction Bowling complains of here, are not subject to "fundamental fairness" challenges under the Due Process Clause.  R. 259 at 65–71 (collecting cases).  Second, Bowling failed to establish that the instruction prejudiced him at trial.  *Id.* at 69–71.  Bowling's motion for reconsideration does not present any evidence that this Court's conclusion is subject to reasonable debate.

As an initial matter, the authority cited by Bowling actually bolsters this Court's conclusion that Bowling's claim lacks merit.  *See* R. 262 at 23 (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).  Bowling did not object to the limiting instruction used at trial.  Quite the opposite.  Defense counsel formulated the limiting instruction that the trial judge used.  *See* 19 T.E. 2808–10.  And "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."  *Kibbe*, 431 U.S. at 154.  Even when the deferential standard of § 2254(d) is set aside, Bowling's underlying constitutional claim faces a burden "even greater than the showing required to establish plain error on direct appeal."  *Kibbe*, 431 U.S. at 154.  Nothing in the motion for reconsideration suggests that reasonable jurists would find that Bowling's claim meets that heavy burden.

Bowling never denies that his claim runs afoul of the Supreme Court's repeated admonition that the Due Process Clause should not be used to second guess state-law evidentiary rulings.  *See* R. 259 at 69 (explaining that Bowling's claim contradicts the

---

conceptions of justice which lie at the base of our civil and political institutions" (internal quotation marks omitted)); *see also Johnson*, 2013 WL 610199 at *8 (holding that the presumption of a merits determination by the state court will not be rebutted where the "state-law rule subsumes the federal standard—that is, it if as least as protective as the federal standard").

Supreme Court's teachings in *Dowling v. United States*, 493 U.S. 342 (1990), and *Perry v. New Hampshire*, 132 S. Ct. 716 (2012)).  That line of precedent was this Court's primary ground for resolving Bowling's claim.  *See id.* at 65, 69.  The Supreme Court has been emphatic that federal courts should not use the open-ended standard of "fundamental fairness" to determine what types of evidence should or should not be admitted at trial.  *See, e.g.*, *Perry*, 132 S. Ct. at 723 (collecting cases).  To go one step further by nitpicking the particular limiting instruction that a trial court used would totally disregard the limited role the Due Process Clause plays in evidence law.  Consequently, Bowling has not made a cognizable due-process claim, and the particular facts of his case do not matter.

Bowling asserts that the three-Justice dissent in *Dowling* demonstrates that reasonable jurists could disagree with this Court's application of the Due Process Clause.  *See* R. 262 at 20−22.  Again, Bowling uses selective quotation to mischaracterize a case.[8]  This time, he portrays Justice Brennan's dissent as arguing that the evidence in *Dowling* violated the Due Process Clause.  *See id.*  Not so.  The dissent in *Dowling* focused exclusively on the Double Jeopardy Clause.  *See Dowling*, 493 U.S. at 354 (Brennan, J., dissenting) ("Because the introduction of this testimony effectively forced petitioner to defend against charges for which he had already been acquitted, the doctrine of criminal collateral estoppel grounded in the Double Jeopardy Clause should have prohibited the Government from introducing the testimony.").  The dissent never suggested that the Due Process Clause barred introduction of the evidence.  And as this Court's opinion explained, the double-jeopardy issue in *Dowling*

---

[8] Of course, now that it is clear that § 2254(d) applies, *see Johnson*, 2013 WL 610199 at *8, a dissent in a Supreme Court case is irrelevant to the debatability of Bowling's due-process claim, *see Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000) (Opinion of O'Connor, J.) (clarifying that § 2254(d) limits the "clearly established Federal law" that can overturn a sentence to the Supreme Court's holdings).

was not present here because Bowling had not been tried for the Rockcastle shooting.  *See* R. 259 at 68.   Bowling presents no other case as evidence that a reasonable jurist would use the federal Due Process Clause to question the adequacy of a state-law limiting instruction.

There is also no reasonable basis to debate whether Bowling was unduly prejudiced. Bowling's claim to prejudice boils down to this:  Because the trial court told the jurors not to use Ricky Smith's testimony to infer that Bowling committed the two murders, this Court should assume that the jurors did precisely the opposite.  *See* R. 262 at 22−26.  That is not a reasonable argument.   In fact, given that the argument asks this Court to defy the well-established principle that courts must presume that jurors followed the instructions they are given, it is decidedly unreasonable.  *See, e.g.*, *United States v. Ham*, 628 F.3d 801, 811 (6th Cir. 2011) ("The general rule is that a jury is presumed to follow the district court's instructions . . . ." (citing *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991)); *Scott v. Mitchell*, 209 F.3d 854, 879 (6th Cir. 2000) (holding that courts must presume curative instructions were effective unless "there is an 'overwhelming probability' that they were ignored" (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).

Bowling makes much of the fact that the jurors were not instructed on what inferences they could draw.  *See* R. 262 at 23−26.  Yet he offers no case in which a court—or even a dissenting judge—has argued that the failure to supplement an admonishing instruction with a list of permissible inferences prejudices a defendant.  To be sure, the decisions Bowling cites did emphasize the limiting instruction that the trial court gave.  *See id.* at 23 (citing *Bey v. Bagley*, 500 F.3d 514, 521 (2007) and *Dowling*, 493 U.S. at 353).  But no reasonable jurist has suggested that jurors—simply because the trial court did not identify the inferences they

28

could draw—would impermissibly apply evidence in the face of a limiting instruction. What's more, Bowling urges this theory in a case where he received the limiting instruction that he requested, *see* 19 T.E. 2808−10, and did not object to any of the prosecutor's closing argument that he now claims prejudiced him, *see* 24 T.E. 3571−73, 3577, 3579−80, 3583−92; *see also* R. 262 at 22−24 (claiming that the closing argument was improper and somehow overrode the limiting instruction). Given the facts of his case, no reasonable jurist would take the logical leap required by Bowling's novel theory. *See, e.g.*, *Kibbe*, 431 U.S. at 154; *Namet v. United States*, 373 U.S. 179, 190 (1963) ("We see no reason to require such extravagant protection against errors which were not obviously prejudicial and which the petitioner himself appeared to disregard.").

The other cases that Bowling cites have no bearing on his claim. *See* R. 262 at 23−25. They all address whether the jury instructions given prior to deliberation led the jurors to apply presumptions to the evidence that absolved the prosecution of its reasonable-doubt burden. *See Estelle v. McGuire*, 502 U.S. 62, 78−80 (1991) (O'Connor, J., concurring) (expressing concern that the jury instruction led jurors to take it for granted that the defendant had committed the violent acts described by the prior acts evidence produced at trial); *Kibbe*, 431 U.S. at 153−157 (rejecting the petitioner's argument that the trial court's use of the statutory language as jury instructions, without including a specific instruction on causation, violated his due process rights); *Cupp v. Naughten*, 414 U.S. 141, 149 (1973) (rejecting the defendant's argument that the trial court's instruction that jurors should presume that witnesses speak the truth violated his due process rights). Not only do they address a completely different constitutional issue, they adopt a much different theory of

29

juror decision making than Bowling's.  The Justices' concern in these cases was that jury instructions might affirmatively mislead jurors into assuming facts the prosecution had to prove.  None suggested that a lack of specific instruction about permissible inferences would undermine an admonishment against impermissible ones.

Since Bowling has not presented any evidence that reasonable jurists would debate this Court's resolution of Claim 3, no COA will issue on it.

### CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)   Petitioner Ronnie Bowling's Motion for Reconsideration, R. 262, is **DENIED IN PART** and **GRANTED IN PART.**

(2)   Pursuant to 28 U.S.C. § 2253(c)(2), Bowling is **GRANTED** a Certificate of Appealability on **Claims 6** and **36**, R. 262 at 5–6.  The question on appeal is limited to the same issue in *Wheeler*:  Whether Kentucky's statutory scheme for proportionality review of capital sentences is constitutional.

(3)   Bowling is **DENIED** a Certificate of Appealability for all his other claims. R. 262 at 7–26.

This the 21st day of March, 2013.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**